Jerry Baxter
9427 Rose Eden Drive
Morongo Valley, CA 92256
(760) 620-3190
jwarnerbaxter@gmail.com
Plaintiff, Pro Se



FILED
CLERK, U.S. DISTRICT COURT

OCT - 3 2025

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION    BY DEPUTY

**FEE PAID**

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JERRY BAXTER,** <br> Plaintiff, <br><br> v. <br><br> **SAN BERNARDINO COUNTY;** <br> **PAUL CHAPMAN, in his official and individual capacities;** <br> **ESILA WILLIAMS, in her official and individual capacities; and** <br> **DONNA GARCIA, in her official and individual capacities,** <br> Defendants. | Case No. E D C V 25 - 0 2 6 2 0 - DOC (MAR) <br><br> **COMPLAINT FOR VIOLATION OF RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT (RLUIPA), DEPRIVATION OF CONSTITUTIONAL RIGHTS, AND VIOLATION OF CALIFORNIA CIVIL RIGHTS LAWS JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This is a civil rights action arising under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc et seq., the United States Constitution, and California civil rights statutes.

2. Plaintiff Jerry Baxter seeks relief from San Bernardino County's categorical denial of a religious accommodation to bury his late father, Edwin Baxter, on Plaintiff's rural 5-acre property in accordance with sincerely held religious beliefs rooted in 4,000 years of biblical tradition requiring burial of the deceased on family land. Plaintiff's religious convictions prohibit cremation and mandate full-body burial in natural soil.

3. Despite being notified of RLUIPA protections on June 30, 2025 Defendants denied the burial permit without conducting any site-specific evaluation, without identifying in writing any compelling governmental interest, and without analyzing less restrictive alternatives.

4. After learning Plaintiff's religious beliefs demand full-body burial, Supervisor Donna Garcia handed Plaintiff a document highlighting California's cremation statute without verbal explanation. Chief Deputy Registrar Esila Williams stated she 'can't issue burial permits willy-nilly' when Plaintiff cited RLUIPA and biblical tradition, then stated that burial on private property was 'illegal,' a statement directly contradicted by California Health & Safety Code § 103055(a)(3), which requires local registrars to issue burial permits specifying 'the address or description of

the place where remains shall be buried or scattered' without limiting such burial to cemeteries.

5. As a direct result of Defendants' violations, Edwin Baxter's remains have been held by the County Coroner under Case No. 702503939 since June 6, 2025. On September 17, 2025, after Plaintiff notified the Coroner's office of potential discrimination, the Plaintiff received a letter from the county declaring the remains abandoned. Subsequent interactions with Deputy McCarthy resulted in a requirement, issued by Deputy McCarthy, for the Plaintiff to perform daily updates to avoid cremation. Edwin Baxter's remains continue to be detained nearly four months after his death, preventing religious burial and causing ongoing irreparable harm.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(3) and (4) (civil rights), 42 U.S.C. § 2000cc-2(a) (RLUIPA), and 28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief).

7. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they arise from the same case or controversy as the federal claims and form part of the same nucleus of operative facts.

8. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in San Bernardino County, California, and the property at issue is located at 9427 Rose Eden Drive, Morongo Valley, California 92256, within the Eastern Division of the Central District of California.

## PARTIES

9. Plaintiff Jerry Baxter is a resident of Morongo Valley, San Bernardino County, California, and owner of property at 9427 Rose Eden Drive, Morongo Valley, California 92256, a 5-acre rural parcel.

10. Defendant San Bernardino County is a political subdivision of the State of California. Local registrars have authority to issue burial permits under California Health & Safety Code § 103055. The County also has regulatory authority over cemeteries under California Health & Safety Code § 8115.

11. Defendant Paul Chapman is the Chief Financial Officer of the San Bernardino County Department of Public Health and is sued in his official and individual capacities. Chapman oversees the Vital Statistics office and signed the written denial of Plaintiff's request dated July 23, 2025.

12. Defendant Esila Williams is the Chief Deputy Registrar of San Bernardino County Vital Statistics and is sued in her official and individual capacities. Williams directly handled Plaintiff's burial permit request and made statements to Plaintiff regarding the permit process.

13. Defendant Donna Garcia is a Supervisor at San Bernardino County Vital Statistics and is sued in her official and individual capacities. Garcia participated in the July 11, 2025 meeting with Plaintiff regarding his burial permit request.

## STATEMENT OF FACTS

## A. Plaintiff's Sincerely Held Religious Beliefs and Property Description

14. Plaintiff holds sincere religious beliefs based on the biblical tradition of family burial on family-owned land, as exemplified by Abraham's burial of Sarah in the Cave of Machpelah (Genesis 23:19-20) and continued through generations of the patriarchs. This 4,000-year tradition requires burial of human remains in natural soil on family land to return the body to the earth from which it came, fulfilling the biblical command: 'For dust you are, and to dust you shall return' (Genesis 3:19).

15. These beliefs specifically prohibit cremation and require full-body burial in the ground to honor the deceased and maintain the sacred connection between generations, following the example of the patriarchs who were 'gathered to their people' on family property (Genesis 49:29-32).

16. Plaintiff has a sincere religious duty as a son to provide burial for his late father on family land in accordance with these biblical commands. Plaintiff believes burial on the family property where he and his father lived would be an appropriate final resting place that honors both his father's memory and Plaintiff's religious obligations.

17. Plaintiff is a member of Joshua Springs Calvary Chapel. Pastors Jerel Hagerman and Fem Ontiveros can testify to Plaintiff's religious beliefs and practices.

18. Plaintiff owns a 5-acre rural parcel at 9427 Rose Eden Drive, Morongo Valley, California 92256. The proposed burial site is located approximately 218 feet from the well, approximately 250 feet from the eastern property line, approximately 175 feet from the northern property

line, and approximately 153 feet from the southern property line. Plaintiff
measured these distances using a wheel measurement tool and offers to
cooperate with a professional survey to establish exact measurements.
These approximate distances far exceed the 100-foot distance from water
sources accepted in Hamburg v. Mendocino County (Mendocino Superior
Court 2013, Case No. SCUK-CVPT-13-67626), where the county
ultimately withdrew its objections and issued the burial permit after the
homeowner raised California constitutional privacy arguments.

### B. Initial Religious Accommodation Request and County's Response

19. Plaintiff's late father, Edwin Baxter, passed away on June 6, 2025, and
his remains were taken into custody by the San Bernardino County
Coroner under Case No. 702503939.

20. On June 30, 2025, Plaintiff contacted San Bernardino County
requesting religious accommodation for burial of Edwin Baxter on private
property. Plaintiff cited RLUIPA protections to county staff member
Christina and explained the religious necessity of burial before the planned
memorial service on July 26, 2025.

21. Plaintiff was referred to Glen Harris, Morongo Basin Field
Representative, who directed him to the Department of Public Health Vital
Statistics office as the entity responsible for issuing burial permits.

22. On July 3, 2025, Vital Statistics staff member Claire stated the County
requires '6 bodies to establish a cemetery,' referencing commercial
cemetery regulations (Health & Safety Code § 7003's definition of
'cemetery' as six or more burials).

## C. Plaintiff's Efforts to Accommodate County Requirements

23. Between July 3 and July 10, 2025, Plaintiff made multiple phone calls and sent emails requesting religious accommodation. Chief Deputy Registrar Williams did not respond during this period.

24. On July 11, 2025, Plaintiff and his wife Candace Baxter went to the Vital Statistics office in person and spent over three hours there. Supervisor Donna Garcia, identifying herself as a supervisor, stated she could not execute her authority and deferred all decisions to Chief Deputy Registrar Esila Williams.

25. During this visit, Chief Deputy Registrar Williams called Plaintiff from a private cell phone number. Williams stated the office lacked authority to issue permits for private-property burial and that she 'can't issue burial permits willy-nilly.' Plaintiff documented this conversation. This statement reveals the County exercises discretionary judgment in issuing burial permits.

26. During the same July 11, 2025 visit, Plaintiff provided Supervisor Garcia with extensive documentation, including: (a) the introductory text of 42 U.S.C. § 2000cc (RLUIPA); (b) a document containing California precedents for home burial, including Hamburg v. Mendocino County and Western Sonoma County cases; (c) a formal RLUIPA accommodation request; (d) an aerial view of his property showing the proposed burial site with measured distances to property lines and well location; (e) a photograph of the proposed burial site; and (f) a hand-drawn illustration of the site. The measured distances are set forth in Paragraph 18 above.

27. During the same July 11, 2025 visit, after Plaintiff had explained his religious convictions requiring full-body burial, Supervisor Donna Garcia handed Plaintiff a document containing Health & Safety Code citations with § 7116 highlighted in yellow. Section 7116 authorizes scattering of cremated remains. Supervisor Garcia provided no verbal explanation when handing Plaintiff this document.

28. Plaintiff offered, both verbally and in writing, to comply with any reasonable conditions the County wished to impose.

29. Chief Financial Officer Paul Chapman stated on July 11, 2025, that County Counsel would review the RLUIPA materials and call Plaintiff back on Monday, July 14, 2025. Plaintiff did not receive a callback by July 14, 2025.

### D. County's Escalating Obstruction and False Statements of Law

30. On July 16, 2025, after receiving no response by the July 14 date, Plaintiff emailed Supervisor Dawn Rowe documenting the pattern of obstruction since June 30. Plaintiff stated he would file a federal lawsuit on July 18, 2025, if the County did not respond by July 17, 2025, at 5:00 PM.

31. On July 17, 2025, after Supervisor Rowe responded that her office was 'unable to provide further assistance,' Chief Deputy Registrar Williams called Plaintiff offering help. She sent Plaintiff a death registration worksheet and instructed Plaintiff to list himself as the 'funeral establishment,' creating the impression that accommodation would be granted.

32. Plaintiff completed and returned the worksheet in less than 30 minutes on July 17, 2025.

33. On July 18, 2025, Chief Deputy Registrar Williams called to verbally deny the permit. She stated it was 'illegal to bury a body on personal property.' Williams did not cite any statutory authority actually prohibiting private burial. Plaintiff immediately requested written documentation of the denial.

### E. Final Denial Without Required RLUIPA Analysis

34. On July 23, 2025, three days before the memorial service, the County provided a written denial signed by Chief Financial Officer Paul Chapman. (Declaration ¶22, Exhibit I.) The July 23 denial letter contains the following deficiencies:

35. First, the letter states the County is 'unaware of any law or published court opinion that authorizes the County to issue a burial permit under these circumstances' and claims the County conducted no individualized assessment. The letter states: 'Here, there is no individualized assessment on the part of the County. There is no discretion being made whether or not to issue you, in particular, a burial permit.'

36. Second, the letter does not identify any specific public health or safety concern with Plaintiff's burial proposal on a 5-acre rural parcel, does not explain why the approximate 218-foot distance from the well was insufficient for public health protection, does not address Plaintiff's offers to comply with conditions such as burial depth requirements or use of vaults, and does not analyze less restrictive alternatives to categorical prohibition.

37. Third, the letter does not propose alternative conditions that would permit burial while addressing health and safety concerns, does not reference any site assessment of Plaintiff's property, does not articulate specific health concerns distinguishing Plaintiff's proposal from other permitted burial methods, does not explain what distance from water sources the County considers adequate for public health protection, and does not define an appeal process.

## F. California Statutory Framework and the County's Statutory Dilemma

38. California Health & Safety Code § 103055(a) provides that 'the local registrar... shall issue a permit for disposition' and requires that the permit 'shall specify any one of the following: ... (3) The address or description of the place where remains shall be buried or scattered.'

39. Section 103055(a)(4) grants registrars authority to approve conditions for cremated or hydrolyzed remains, stating the permit may specify: 'The address of the location where the cremated remains or hydrolyzed human remains will be kept... under the conditions the state registrar may approve, including, but not limited to, conditions in keeping with public sensibilities, applicable laws, and reasonable assurances that the disposition will be carried out in accordance with the prescribed conditions.' While subsection (a)(4) specifically addresses cremated and hydrolyzed remains rather than burial under (a)(3), its presence demonstrates the Legislature's recognition that registrars may exercise judgment when evaluating disposition requests.

40. The County's statements appear inconsistent with § 103055. Chief Deputy Registrar Williams stated that burial on private property was

'illegal.' This statement appears inconsistent with § 103055(a)(3), which
explicitly requires local registrars to issue permits for disposition
specifying 'the address or description of the place where remains shall be
buried or scattered.' This language does not limit burial to cemeteries.

41. Chief Financial Officer Chapman's July 23 letter stated the County is
'unaware of any law or published court opinion that authorizes the County
to issue a burial permit under these circumstances.' This statement appears
inconsistent with § 103055(a)(3), the statute Williams and Chapman
administer, which explicitly authorizes issuance of burial permits for non-
cemetery locations.

42. The County faces a statutory dilemma. Under principles of harmonious
construction, courts must interpret statutes to give meaning to every
provision and avoid rendering any provision surplusage. People v. Leiva,
56 Cal.4th 498, 506 (2013). The County may contend that Health & Safety
Code § 7054(a)(1) prohibits depositing human remains 'in any place,
except in a cemetery' and makes such conduct a misdemeanor 'except as
authorized pursuant to' specified sections. This creates a conflict with §
103055.

43. If the County claims permit issuance under § 103055 is a ministerial
act with no discretion, then § 103055(a) requires permit issuance. The
statute states the registrar 'shall issue a permit for disposition' specifying
'the address or description of the place where remains shall be buried or
scattered.' The word 'shall' is mandatory. No statutory criteria exist for
denying a permit when a proper death certificate is presented. If the act is
ministerial, the County must issue the permit for the address Plaintiff
specified: 9427 Rose Eden Drive, Morongo Valley, California 92256.

44. If the County claims discretion to evaluate whether a proposed burial
location qualifies under § 103055, this constitutes 'individualized

assessments of the proposed uses for the property involved' under 42
U.S.C. § 2000cc(a)(2)(C). The County's July 23 letter evidences
individualized assessment. The letter quoted RLUIPA's language
describing 'individualized assessments of the proposed uses for the
property involved,' then evaluated Plaintiff's particular request by stating:
'There is no discretion being made whether or not to issue you, in
particular, a burial permit.' The very act of determining whether discretion
applies to 'you, in particular' for 'a burial permit' is individualized
assessment. Fortress Bible Church v. Feiner, 694 F.3d 208, 217 (2d Cir.
2012) (even 'as of right' uses involve individualized assessments when
officials evaluate whether particular use fits permitted categories). When
individualized assessment occurs, RLUIPA strict scrutiny applies.

45. The County cannot satisfy RLUIPA strict scrutiny. The July 23 letter
states: 'Here, there is no individualized assessment on the part of the
County. There is no discretion being made whether or not to issue you, in
particular, a burial permit.' This statement claims no individualized
assessment while simultaneously making a determination regarding 'you,
in particular,' demonstrating that individualized assessment occurred but
RLUIPA's required analysis was not applied. The letter does not identify a
compelling governmental interest. The statement that the County is
'unaware of any law or published court opinion' authorizing the permit
contradicts § 103055(a)(3) and is not a compelling interest. The County
did not consider less restrictive alternatives. The County could have
proposed conditional approval (such as burial depth requirements, distance
setbacks, vault requirements, or recording obligations) as a less restrictive
alternative to categorical prohibition, but failed to analyze whether such
conditions would achieve any asserted governmental interest.

46. Under harmonious construction, § 7054(a) prohibits unauthorized
burial, and § 103055 provides the authorization mechanism through permit

issuance. Burial pursuant to a § 103055 permit is authorized and therefore not prohibited by § 7054(a). Moreover, § 7054(b) uses permissive language ('may be disposed of pursuant to') rather than exclusive language, indicating the listed exceptions are not exhaustive. Section 7054(c) confirms that exceptions beyond § 7054(b) exist, specifically exempting Native American remains from § 7054(a)'s prohibition. Religious burial pursuant to § 103055 permit should be recognized as another such exception, consistent with the precedent of religious and cultural exemptions established in § 7054(c).

47. If irreconcilable conflict exists between the statutes, rules of statutory construction require application of the more specific statute (§ 103055's permitting provisions) over the general prohibition (§ 7054(a)). The County's interpretation would render § 103055(a)(3) meaningless, violating the rule that courts must construe statutes to give effect to all provisions.

48. Even if § 7054(a) were interpreted to categorically prohibit non-cemetery burial notwithstanding § 103055, RLUIPA preempts this state law prohibition under the Supremacy Clause (U.S. Const. art. VI, cl. 2). RLUIPA requires state and local governments to grant religious exemptions from land use regulations that substantially burden religious exercise without compelling justification. 42 U.S.C. § 2000cc-2(f)(1). See also Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 765 (7th Cir. 2003) (RLUIPA preempts conflicting local ordinances).

49. Under any interpretation of California law, Plaintiff is entitled to a burial permit. If § 103055 permit issuance is ministerial, the County must issue the permit. If § 103055 permit issuance involves discretion, the County conducted individualized assessment and cannot satisfy RLUIPA

strict scrutiny. If § 7054(a) prohibits the burial, RLUIPA preempts state law and requires religious exemption.

### G. Evidence Raising Questions Regarding Neutrality

50. Defendants' actions warrant application of strict scrutiny under Church of Lukumi Babalu Aye v. City of Hialeah, 508 U.S. 520 (1993), and Fulton v. City of Philadelphia, 141 S. Ct. 1868 (2021), for multiple independent reasons.

51. First, Defendants maintain a discretionary permitting system. California Health & Safety Code § 103055(a)(4) grants discretionary authority to approve conditions ('the state registrar may approve'). Chief Deputy Registrar Williams' statement that she 'can't issue burial permits willy-nilly' acknowledges the County exercises discretion in permit decisions. Under Fulton, 141 S. Ct. at 1877, when government creates a discretionary system that allows 'individualized exemptions,' it must satisfy strict scrutiny to deny a religious accommodation.

52. Second, the County's regulatory framework treats religious burial less favorably than comparable secular conduct. The County operates public cemeteries permitting secular burials, issues permits to licensed commercial cemeteries, and permits individuals to bury deceased animals on private property. County Code § 32.0105 requires animal remains be disposed of within 24 hours in a 'safe and sanitary manner' but does not require permits, specify burial depth, mandate distance restrictions, or require individualized review. The fundamental public health concern, preventing contamination of soil and groundwater from decomposing organic matter, applies equally to human and animal remains, yet the County permits animal burial with minimal regulation while categorically

prohibiting human burial even when the applicant offers to meet strict conditions. This differential treatment is not neutral.

53. Third, the timing and content of certain County actions raise questions regarding whether the denial was motivated by neutral public health concerns or by animus toward Plaintiff's religious exercise. The conduct includes: (a) After Plaintiff explained his religious convictions requiring burial, Supervisor Garcia handed him a document highlighting the cremation statute without verbal explanation; (b) When Plaintiff cited RLUIPA, Chief Deputy Registrar Williams responded that she 'can't issue burial permits willy-nilly'; (c) Williams stated that private burial was 'illegal', contradicting the statute she administers (§ 103055(a)(3)); (d) Chapman's letter stated the County is 'unaware of any law or published court opinion' authorizing the permit, also contradicting § 103055; (e) The pattern of conduct described in Paragraphs 54-61 below.

## H. September Abandonment Threat and Evidence of Possible Retaliation

54. On August 15, 2025, at 8:52 AM, Plaintiff spoke to Coroner Supervisor Elissa Fleak and informed her Plaintiff would be suing the County. Supervisor Fleak requested evidence. At 9:07 AM, Plaintiff emailed Supervisor Fleak the July 23 denial letter. Supervisor Fleak did not reply to confirm receipt.

55. On September 9, 2025, Plaintiff received a voicemail from Rebecca London at the Coroner's office. The voicemail stated she had not received an update from Plaintiff. Plaintiff promptly called back and left a voicemail for Rebecca London with an update.

56. On September 17, 2025, Plaintiff received a letter from Captain Mike Leum dated September 11, 2025, declaring the remains abandoned. The letter was sent two days after Plaintiff's September 9 update to Rebecca London.

57. At 4:07 PM on September 17, 2025, Plaintiff called the Coroner's office about the abandonment letter. An unidentified clerk answered and forwarded Plaintiff's number to Deputy David McCarthy.

58. At 4:30 PM on September 17, 2025, Plaintiff emailed Supervisor Elissa Fleak disputing the abandonment letter. The email documented that Plaintiff had spoken to Elissa Fleak on August 15 before sending the requested email, and that Plaintiff had responded to Rebecca London's September 9 call within seven minutes by leaving a voicemail. The email stated: 'You do not have permission to alter my father's remains.' The email cited 'current and relevant discrimination charges against San Bernardino County.' The email demanded confirmation of receipt. Plaintiff received no response to this email.

59. At 4:44 PM on September 17, 2025, Deputy David McCarthy called Plaintiff. Deputy McCarthy confirmed the last note in the file was about the RLUIPA lawsuit. Plaintiff cited federal rights for religious burial. Deputy McCarthy stated the remains were decomposing and that it was cruel. Deputy McCarthy stated he was recording the call. Deputy McCarthy required Plaintiff to check in by October 1, 2025.

60. The timing of this abandonment declaration, sent two days after Plaintiff's August 15 notification of lawsuit and September 9 update raises questions regarding whether it was motivated by standard procedure or by retaliatory animus.

61. On October 1, 2025, Plaintiff called Deputy McCarthy to check in.
Plaintiff explained the TRO preparation had exceeded expectations and
Plaintiff was not ready to file that day but expected to file October 2.
Deputy McCarthy stated he would not be on duty October 2 and instructed
Plaintiff to call and check in with the deputy coroner on duty. Deputy
McCarthy communicated that the onus was on Plaintiff to keep the
Coroner's office informed on a daily basis or the County may proceed with
abandonment. The Coroner's office now requires Plaintiff to provide daily
updates to a Deputy Coroner on duty.

## I. Continuing Irreparable Harm

62. As of October 1, 2025, Edwin Baxter's remains have been held by the
County Coroner under Case No. 702503939 since June 6, 2025, a period
of nearly four months.

63. The County's denial has prevented Plaintiff from fulfilling his sincere
religious obligation to bury his father on family land, causing ongoing
religious harm and severe emotional distress.

64. Plaintiff has experienced anxiety, depression, difficulty sleeping, and
grief compounded by the inability to fulfill religious obligations. Plaintiff
has sought spiritual counseling from Pastor Jerel Hagerman and Pastor
Fem Ontiveros at Joshua Springs Calvary Chapel.

65. The County's denial has harmed Plaintiff's entire family. Many family
members, including relatives from out of state, attended the July 26
memorial service expecting to participate in burial rites according to
shared religious tradition. The inability to complete the burial has left the
family without closure.

66. Without both a death certificate under California Health & Safety Code § 102775 and a burial permit under § 103055, Plaintiff cannot satisfy both the County's mounting pressure and his own religious obligations. If the County proceeds with abandonment, the Coroner's office may cremate or otherwise dispose of Edwin Baxter's remains, permanently preventing Plaintiff from fulfilling his religious obligations.

## COUNT ONE

*Violation of RLUIPA - Substantial Burden 42 U.S.C. § 2000cc(a)*

67. Plaintiff incorporates all preceding paragraphs.

68. This count is asserted against all Defendants: San Bernardino County
(entity liability), Chapman (official and individual capacities), Williams
(official and individual capacities), and Garcia (official and individual
capacities).

69. RLUIPA provides that '[n]o government shall impose or implement a
land use regulation in a manner that imposes a substantial burden on the
religious exercise of a person' unless the government demonstrates that
imposition of the burden '(A) is in furtherance of a compelling
governmental interest; and (B) is the least restrictive means of furthering
that compelling governmental interest.' 42 U.S.C. § 2000cc(a)(1).

70. Defendants' categorical denial of burial permits for private property
constitutes implementation of a land use regulation. California Health &
Safety Code § 103055 establishes a permitting system under which local
registrars issue burial permits.

71. Defendants' permitting system involves individualized assessment
triggering RLUIPA jurisdiction under 42 U.S.C. § 2000cc(a)(2)(C). As
demonstrated in Paragraphs 42-49 above, if permit issuance is ministerial,
the County must issue the permit under § 103055(a); if permit issuance
involves discretion, the County's evaluation of Plaintiff's particular request
constitutes individualized assessment. The County's July 23 letter
evidences individualized assessment by stating: 'There is no discretion

being made whether or not to issue you, in particular, a burial permit.' The
act of determining whether discretion applies to 'you, in particular' is
individualized assessment. Fortress Bible Church, 694 F.3d at 217.

72. Defendants' categorical prohibition substantially burdens Plaintiff's
religious exercise by completely preventing the religious burial
commanded by his faith. This is not a mere inconvenience but a total bar
to a central religious practice. See Warsoldier v. Woodford, 418 F.3d 989,
995 (9th Cir. 2005) (substantial burden exists when government action is
'oppressive' to religious exercise). If Defendants rely on Health & Safety
Code § 7054(a)(1), which prohibits depositing human remains 'except in a
cemetery' and makes such conduct a misdemeanor, this criminal
prohibition itself demonstrates the substantial burden: Plaintiff faces
potential criminal liability for exercising his religion.

73. Defendants have not identified any compelling governmental interest
justifying this burden. The July 23, 2025 denial letter states the County is
'unaware of any law or published court opinion that authorizes the County
to issue a burial permit under these circumstances,' which is not a
governmental interest and is incorrect as a matter of law given §
103055(a)(3). The letter does not identify any specific public health or
safety concern with Plaintiff's proposed burial.

74. Defendants have not demonstrated that complete prohibition is the
least restrictive means of furthering any governmental interest. The July
23 letter does not address less restrictive alternatives such as: inspection
requirements, minimum burial depth specifications, distance requirements
from water sources or property lines, use of vaults or sealed caskets,
recording requirements for future property owners, or any other regulatory
conditions. The statute contemplates that conditional approval may serve
public health interests, as § 103055(a)(4) authorizes conditions for

cremated and hydrolyzed remains. Defendants could have analyzed whether similar conditions applied to burial (depth requirements, distance setbacks, vault use, recording) would constitute less restrictive alternatives, but the July 23 letter contains no such analysis. RLUIPA requires the government to show it 'actually considered and rejected the efficacy of less restrictive measures.' Holt v. Hobbs, 574 U.S. 352, 364-65 (2015).

75. As referenced in Paragraph 18 above, Hamburg suggests less restrictive alternatives may be workable while protecting public health. San Bernardino County has not explained why Plaintiff's property, with 218 feet from the well (exceeding the Hamburg standard by 118 feet), cannot accommodate burial with reasonable conditions.

76. Defendants' actions violate 42 U.S.C. § 2000cc(a).


## COUNT TWO

*Violation of First Amendment - Free Exercise Clause 42 U.S.C. § 1983*

77. Plaintiff incorporates all preceding paragraphs.

78. This count is asserted against: (a) San Bernardino County for entity liability under Monell v. Department of Social Services, 436 U.S. 658 (1978); (b) Chief Financial Officer Paul Chapman in his individual capacity; (c) Chief Deputy Registrar Esila Williams in her individual capacity; and (d) Supervisor Donna Garcia in her individual capacity.

79. The First Amendment, made applicable to state and local governments through the Fourteenth Amendment, prohibits government from substantially burdening religious exercise without compelling justification.

80. Defendants' denial substantially burdens Plaintiff's free exercise of religion by preventing him from fulfilling a core religious obligation, providing burial for his deceased father on family land in accordance with 4,000 years of biblical tradition.

81. Defendants' actions are not neutral or generally applicable, triggering strict scrutiny under Church of Lukumi Babalu Aye v. City of Hialeah, 508 U.S. 520 (1993), and Fulton v. City of Philadelphia, 141 S. Ct. 1868 (2021).

82. First, Defendants maintain a discretionary permitting system. Chief Deputy Registrar Williams' statement that she 'can't issue burial permits willy-nilly' acknowledges the County exercises discretion in permit decisions. Under Fulton, 141 S. Ct. at 1877, a discretionary system of exemptions requires compelling interest for denial of religious accommodation. As demonstrated in Paragraphs 42-49 above, any system with discretion triggers strict scrutiny, and the County's claim of 'no discretion' would require permit issuance under § 103055(a)'s mandatory 'shall issue' language.

83. Second, the County's regulatory framework treats religious burial less favorably than comparable secular conduct. The County permits secular burials (county cemeteries, commercial cemeteries) and permits animal burial on private property under County Code § 32.0105 with only general 'safe and sanitary' requirements. From a public health perspective, the fundamental concern, preventing soil and groundwater contamination from decomposing organic matter, applies equally to human and animal remains. The County's willingness to permit disposal of animal remains on private property with minimal regulation, while categorically prohibiting human burial even when the applicant offers to comply with strict conditions, demonstrates that categorical prohibition is not necessary to

protect public health and that the policy treats religious exercise less favorably than secular conduct.

84. Third, the pattern of conduct described in Paragraphs 50-58 raises questions regarding neutrality.

85. Defendants cannot satisfy strict scrutiny. The July 23 letter does not identify a compelling interest or analyze least restrictive means. The statement that the County is 'unaware of any law or published court opinion' authorizing the permit contradicts § 103055 and is not a compelling interest. Categorical prohibition is not the least restrictive means when the County failed to analyze whether reasonable conditions (burial depth, distance setbacks, vault requirements, or recording) could achieve any asserted health interest while permitting religious exercise.

86. Defendants have violated Plaintiff's rights under the Free Exercise Clause of the First Amendment.

## COUNT THREE

*Violation of Fourteenth Amendment - Equal Protection 42 U.S.C. § 1983*

87. Plaintiff incorporates all preceding paragraphs.

88. This count is asserted against Defendant San Bernardino County for entity liability.

89. The Equal Protection Clause of the Fourteenth Amendment prohibits government from treating similarly situated persons differently without adequate justification.

90. Plaintiff, seeking to bury his father on private rural property for religious reasons, is similarly situated to: (a) persons who bury deceased family members in county or commercial cemeteries; and (b) licensed funeral establishments that obtain burial permits under § 103055.

91. Defendants permit secular disposition of human remains through various means (county cemeteries, commercial cemeteries, cremation) while categorically denying Plaintiff's religious burial on private property despite his willingness to meet reasonable health and safety conditions.

92. This disparate treatment lacks rational basis. The July 23 denial letter does not identify a legitimate governmental interest distinguishing Plaintiff's proposed burial from the secular burial methods the County permits.

93. Where a classification burdens the fundamental right of religious exercise, strict scrutiny applies. Defendants cannot satisfy strict scrutiny for the reasons stated in Counts One and Two.

94. This disparate treatment violates the Equal Protection Clause of the Fourteenth Amendment.

## COUNT FOUR

*Violation of Fourteenth Amendment - Procedural Due Process 42 U.S.C. §
1983*

95. Plaintiff incorporates all preceding paragraphs.

96. This count is asserted against: (a) San Bernardino County for entity liability; and (b) Chief Financial Officer Paul Chapman, Chief Deputy

Registrar Esila Williams, and Supervisor Donna Garcia in their individual capacities.

97. The Due Process Clause of the Fourteenth Amendment requires government to provide meaningful process before depriving persons of protected interests.

98. Plaintiff has protected interests in: (a) the disposition of his deceased father's remains (California Health & Safety Code § 7100 grants next of kin the right to control disposition); and (b) the use of his private property for religious purposes.

99. Defendants deprived Plaintiff of these interests without meaningful process. The County provided no formal hearing or administrative process to evaluate Plaintiff's accommodation request. Communications were inconsistent. County officials deflected responsibility, stated they would provide callbacks that did not occur, and ultimately issued a denial without analysis and without notice of any appeal procedure.

100. The July 23, 2025 denial letter provided no findings regarding Plaintiff's specific property or proposal, no explanation of the factual or legal basis for denial (indeed, it misstated the law by claiming the County was 'unaware of any law or published court opinion' authorizing the permit under § 103055), and no notice of any appeal procedure or administrative remedy.

101. This deprivation of procedural due process violates the Fourteenth Amendment.


**COUNT FIVE**

*Violation of California Constitution Article I, Section 1 - Right to Privacy
(Supplemental State Law Claim)*

102. Plaintiff incorporates all preceding paragraphs.

103. This count is asserted against all Defendants.

104. The California Constitution Article I, Section 1 protects fundamental
privacy rights, including decisions concerning family, death, and burial
practices.

105. Plaintiff's decision to bury his father on family land according to
sincere religious beliefs falls within this zone of privacy protected from
arbitrary government interference.

106. California's statutory scheme expressly permits burial on non-
cemetery property. Health & Safety Code § 103055(a)(3) requires local
registrars to issue burial permits specifying 'the address or description of
the place where remains shall be buried or scattered.' This language does
not limit burial to cemeteries. San Bernardino County permits burial of
animals on private property under County Code § 32.0105 without
requiring permits, with only general requirements for 'safe and sanitary'
disposal.

107. As referenced in Paragraph 18 above, Hamburg illustrates that
California counties can accommodate home burial on rural property
consistent with public health protection.

108. Defendants' categorical prohibition violates Plaintiff's California
constitutional right to privacy. No compelling state interest justifies this
intrusion, and reasonable conditions could address legitimate regulatory
concerns without prohibiting the burial entirely.

109. Plaintiff seeks declaratory relief that California Constitution Article I, Section 1 protects the right to home burial on rural private property with reasonable conditions, and injunctive relief requiring Defendants to issue the burial permit.

## COUNT SIX

*Violation of California Government Code § 11135 - Religious Discrimination (Supplemental State Law Claim)*

110. Plaintiff incorporates all preceding paragraphs.

111. This count is asserted against Defendant San Bernardino County.

112. California Government Code § 11135 provides: 'No person in the State of California shall, on the basis of... religion... be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, or is funded directly by the state, or receives any financial assistance from the state.'

113. San Bernardino County's burial permit process under § 103055 is a program or activity conducted and operated by the County, a local governmental agency within the meaning of § 11135.

114. Defendants denied Plaintiff full and equal access to the burial permit process on the basis of his religion. Defendants permit secular burials in county and commercial cemeteries, but categorically denied Plaintiff's religious burial request without individualized assessment or consideration of his religious needs.

115. This discrimination violates California Government Code § 11135, entitling Plaintiff to injunctive relief, declaratory relief, and other appropriate remedies.

## COUNT SEVEN

*Declaratory Judgment 28 U.S.C. §§ 2201-2202*

116. Plaintiff incorporates all preceding paragraphs.

117. This count is asserted against all Defendants.

118. An actual, justiciable controversy exists between Plaintiff and Defendants regarding: (a) the proper interpretation of California Health & Safety Code § 103055 and its relationship to § 7054(a); (b) whether § 103055 requires permit issuance or involves discretionary individualized assessment; (c) what standards apply under RLUIPA to county denial of religious burial requests; (d) whether San Bernardino County's categorical prohibition violates RLUIPA, the First Amendment, the Fourteenth Amendment, and California constitutional and statutory law; and (e) what standards apply to evaluating compelling interest and least restrictive means under RLUIPA.

119. This controversy is ripe for judicial determination. Plaintiff exhausted available administrative processes (the County provided a final denial with no appeal procedure). The parties' positions are fully adverse.

120. Plaintiff seeks declaratory relief that:

121. (a) California Health & Safety Code § 103055(a) requires the local registrar to 'issue a permit for disposition' specifying 'the address or

description of the place where remains shall be buried or scattered' and
does not limit such burial to cemeteries or prohibit burial on private
property. Section 7003's definition of 'cemetery' as a place for six or more
burials means single burials are not subject to commercial cemetery
regulations. Section 8115 grants counties regulatory authority but does not
mandate categorical prohibition.

122. (b) If permit issuance under § 103055 is a ministerial act with no
discretion, the County must issue the permit because § 103055(a) states
the registrar 'shall issue' the permit specifying the burial location, and no
statutory criteria exist for denial. If permit issuance involves discretion to
evaluate whether a proposed use qualifies, this constitutes individualized
assessment under 42 U.S.C. § 2000cc(a)(2)(C), triggering RLUIPA strict
scrutiny. The County's July 23 letter evidences individualized assessment
by stating: 'There is no discretion being made whether or not to issue you,
in particular, a burial permit.' Fortress Bible Church, 694 F.3d at 217.
Under either interpretation, Plaintiff is entitled to permit issuance.

123. (c) To the extent Defendants contend that Health & Safety Code §
7054(a)(1) prohibits burial on non-cemetery property, this contention fails
for multiple independent reasons: First, § 7054(a) prohibits only
unauthorized burial ('except as authorized pursuant to' specified sections),
and § 103055 provides the authorization mechanism through permit
issuance by the local registrar. When § 7054(a) and § 103055 are read
together harmoniously under People v. Leiva, 56 Cal.4th 498, 506 (2013),
burial pursuant to § 103055 permit is authorized and therefore not
prohibited by § 7054(a). Second, § 7054(b) uses permissive language
('may be disposed of pursuant to') rather than exclusive language,
indicating the exceptions are not exhaustive. Section 7054(c) confirms that
exceptions beyond § 7054(b) exist, specifically exempting Native
American remains. Religious burial pursuant to § 103055 permit should be

recognized as another such exception, consistent with the precedent of religious and cultural exemptions established in § 7054(c). Third, if irreconcilable conflict exists between § 7054(a) and § 103055, rules of statutory construction require application of the more specific statute (§ 103055's permitting provisions) over the general prohibition (§ 7054(a)). Fourth, Defendants' interpretation would render § 103055(a)(3) meaningless, violating the rule that courts must construe statutes to give effect to all provisions.

124. (d) Even if California Health & Safety Code § 7054(a) were interpreted to categorically prohibit non-cemetery burial notwithstanding § 103055, RLUIPA preempts this state law prohibition as applied to Plaintiff. The Supremacy Clause (U.S. Const. art. VI, cl. 2) provides that federal law is the 'supreme Law of the Land... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.' RLUIPA requires state and local governments to exempt religious exercise from generally applicable regulations that substantially burden religion without compelling justification. 42 U.S.C. § 2000cc-2(f)(1). See also Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 765 (7th Cir. 2003) (RLUIPA preempts conflicting local ordinances). Therefore, under the Supremacy Clause, the County must grant Plaintiff a religious exemption from any state statute that would prohibit the burial. The County cannot satisfy RLUIPA's strict scrutiny standard for the reasons stated throughout this complaint. Accordingly, under any interpretation of the relationship between § 7054(a) and § 103055, federal law requires issuance of burial permit to accommodate Plaintiff's religious exercise.

125. (e) San Bernardino County's categorical prohibition of home burial violates RLUIPA, 42 U.S.C. § 2000cc, because it imposes a substantial burden on religious exercise without demonstrating a compelling

governmental interest or that categorical prohibition is the least restrictive means. Conditional approval (such as burial depth requirements, distance setbacks, vault requirements, or recording obligations) constitutes a less restrictive alternative to categorical prohibition, yet the County's denial letter contains no analysis of whether such conditions could achieve any asserted governmental interest.

126. (f) San Bernardino County's categorical prohibition violates the Free Exercise Clause of the First Amendment because it operates through a system that either requires permit issuance (if ministerial) or involves individualized assessment and discretion (if evaluative), treats religious exercise less favorably than secular conduct, and cannot satisfy strict scrutiny.

127. (g) When a county operates a permitting system under § 103055, and substantial burden on religious exercise is shown, the government must demonstrate compelling interest and least restrictive means, which requires: (i) evaluation of the specific property characteristics (size, location, distance from water sources and property lines); (ii) consideration of the applicant's willingness to comply with reasonable conditions; (iii) identification of specific, articulable public health or safety concerns with the particular burial proposal; (iv) consideration of less restrictive means such as burial depth requirements, distance requirements, use of vaults, recording requirements, or other reasonable conditions; and (v) written analysis documenting the compelling interest and least restrictive means evaluation.

128. (h) Rural home burial meeting reasonable health and safety standards (including location at adequate distance from water sources, adequate burial depth, use of appropriate containers, and recording of burial location for future property owners) can satisfy legitimate governmental

interests in public health and land use planning without categorically prohibiting the practice.

129. (i) Plaintiff is entitled to burial permit evaluation under federal and state law consistent with these standards.

130. (j) California Constitution Article I, Section 1 protects decisions regarding burial of family members on rural private property as an aspect of fundamental privacy rights.

131. Declaratory relief under 28 U.S.C. §§ 2201-2202 is appropriate and necessary to resolve this controversy and establish legal standards.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Assume jurisdiction over this matter;

b. Issue a temporary restraining order and preliminary injunction requiring Defendants to: (i) register Edwin Baxter's death and issue a death certificate pursuant to California Health & Safety Code § 102775, and (ii) issue a burial permit pursuant to § 103055 for Edwin Baxter's remains held under Coroner Case No. 702503939;

c. Issue a permanent injunction prohibiting Defendants from denying religious burial permit requests without demonstrating compelling governmental interest and considering less restrictive alternatives as required by RLUIPA, including evaluation of reasonable conditions as alternatives to categorical prohibition;

d. Enter declaratory judgment that: (i) California Health & Safety Code § 103055(a)(3) permits burial on non-cemetery private property; (ii) The County must either issue permits ministerially under § 103055(a) or, if discretion is involved, satisfy RLUIPA strict scrutiny for individualized assessment denials; (iii) San Bernardino County's categorical prohibition of home burial, as applied to Plaintiff's request, violates RLUIPA, the First Amendment, the Fourteenth Amendment, and California constitutional and statutory law; (iv) Under any interpretation of the relationship between § 7054(a) and § 103055, Plaintiff is entitled to permit issuance; (v) California law does not mandate categorical prohibition of single burials on rural private property; and (vi) California Constitution Article I,

Section 1 protects decisions regarding burial of family members on rural private property as an aspect of fundamental privacy rights;

e. Award compensatory damages in an amount to be proven at trial for emotional distress, religious harm, deprivation of religious exercise, and violation of constitutional rights;

f. Award nominal damages for the deprivation of constitutional rights secured by the First and Fourteenth Amendments;

g. Award punitive damages against individual Defendants Chief Financial Officer Paul Chapman, Chief Deputy Registrar Esila Williams, and Supervisor Donna Garcia, if evidence at trial demonstrates conduct warranting such damages under applicable legal standards;

h. Award reasonable attorneys' fees and costs under 42 U.S.C. § 1988(b), 42 U.S.C. § 2000cc-2(a) (RLUIPA), and other applicable fee-shifting provisions;

i. Grant such other and further relief as the Court deems just and proper, including ordering Defendants to revise burial permit policies to comply with § 103055, RLUIPA, and the First Amendment, and provide training to county officials regarding religious accommodation requirements under RLUIPA and the proper interpretation of § 103055.

## JURY DEMAND

Plaintiff demands a jury trial on all claims so triable, including but not limited to claims for compensatory damages, punitive damages, and all factual disputes underlying the claims for injunctive and declaratory relief.

Dated: October 2, 2025

Respectfully submitted,

Jerry Baxter, Pro Se
9427 Rose Eden Dr
Morongo Valley, CA 92256
(760) 620-3190
jwarnerbaxter@gmail.com

## VERIFICATION

I, Jerry Baxter, declare under penalty of perjury under the laws of the United States:

1. I am the Plaintiff in this action.

2. I have read the foregoing Complaint.

3. The facts alleged are true of my own knowledge, except as to matters stated on information and belief, and as to those matters, I believe them to be true.

Executed on October 2, 2025, at Morongo Valley, California.


_____

Jerry Baxter